## Eazor Express, Inc., v. Lloyd's Underwriters

Before Soffel, Weiss and Cercone, JJ.

*Brennan & Brennan,* for plaintiff.

*Pringle, Bredin & Martin,* for defendants.

CERCONE, J., November 21, 1958.—This case comes before the court en banc on defendants' preliminary objections on the grounds that plaintiff failed to attach a copy of an insurance policy in accordance with the requirement of rule 1019(*h*) of the Pennsylvania Rules of Civil Procedure, and that it failed to set forth a sufficient cause of action upon which relief can be granted.

Plaintiff had issued to it two policies of motor truck cargo insurance, both of which were in full force and effect when a loss to cargo occurred on February 23, 1955. The cargo loss consisted of damages to a die truck being hauled for Rockwell Manufacturing Corporation, the value of which was the sum of $46,818. To repair the damages plaintiff paid the manufacturer and others expenses in the sum of $28,006.81.

Home Insurance Company, hereinafter referred to as the primary insurer, issued one of the policies in the sum of $35,000. This policy provided a 100 percent coinsurance clause calculating ultimate limited responsibility. In fixing the amount of insurance to be paid to plaintiff for its losses, the primary insurer divided the amount of the insurance into the value of the cargo, and multiplied the result into the amount of the loss according to the following formula:

$$\frac{\text{Amt. Ins.} \quad \$35,000}{\text{Value} \quad \$46,818} \times \text{Loss } \$28,006.81 = \$20,937.21$$

Under this formula the primary insurer paid plaintiff the sum of $20,937.21.

A second policy, an excess motor truck cargo insurance policy, was issued to plaintiff by defendants, pur-

portedly for the reason of protecting plaintiff on losses in excess of coverage under the primary insurance. This policy of excess motor truck cargo insurance will be referred to hereinafter as the secondary policy. Under paragraph 2 of the insuring agreements of the secondary policy there appears the following condition:

"2. Underwriters hereon shall be liable only after the Primary Insurer has paid or has been held liable to pay the full amount of the ultimate net loss liability as shown in Column A below (hereinafter referred to as the Primary Limit or Limits) and Underwriters shall then be liable to pay only such additional amount or amounts as will provide the Assured with a total coverage under the policy(ies) of the Primary Insurer and this Insurance combined as shown in Column B below.

|  | COLUMN A<br>Limits of Liability of<br>the Primary Insurer | COLUMN B<br>Combined Limits of<br>Liability |
|---|---|---|
| "In respect of each and every accident each vehicle. | U.S. $35,000.<br>10,000<br>ultimate net loss | U.S. $75,000 Gen'l mdse.<br>$50,000 Liquor,<br>Tobacco, Tires and similar mdse. |
| "In respect of each and every accident to merchandise whilst in temporary storage. | U.S. $100,000.<br>ultimate net loss | U.S. $250,000. |
| "In respect of each and every accident whether involving one or more vehicles and/or one or more terminals (SUBJECT ALWAYS TO ALL OF THE ABOVE LIMITS)." | U.S. $100,000.<br>ultimate net loss | U.S. $250,000. |

It is under this secondary policy that plaintiff makes claim for its loss in excess of $20,937.21, to wit, $7,-069.60, and additional claims of $665 for storage and other charges, and $2,500 for cost of counsel.

Defendants refuse to pay these amounts on the theory that until the primary insurer has paid a total of $35,000 there is no responsibility for payment of any amount by defendants. Plaintiff has also brought a cause of action on the theory that if defendants' position is correct in refusing to pay under the policy, then defendants have been unjustly enriched by receipt of the premiums when there never has been any exposure to liability under defendants' policies, and the premiums should be refunded.

Defendants contend they become liable under the terms of their policy only after the full primary coverage of $35,000 has been paid. Defendants' policy does not so state. Paragraph 2 of the insuring agreements held that defendants are liable to plaintiff for payment of an amount above the payment of full ultimate loss *liability*. The 100 percent coinsurance clause in the primary insurance controls the determination of what the ultimate loss is to be according to the formula. It is the full amount of ultimate net loss *liability*, or put another way, the full amount of the $35,000 primary limit *liability*, which in this case was not $35,000, but, as computed under the formula, was $20,937.21. Plaintiff can never receive, under the primary insurance, more than the ultimate net loss liability. Once that liability is computed under the formula, defendants' liability begins under paragraph 2 of the insuring agreements of the secondary policy.

Under paragraph 2 of the insuring agreements defendants are "liable to pay only such additional amount or amounts as will provide the Assured with a *total coverage* under the *policy(ies)* of the Primary Insurer and this Insurance combined as shown in

Column 'B' below". (Italics supplied.) When plaintiff received $20,937.21, it received the full amount of the ultimate net loss liability determined under the formula of the primary insurer and since the total loss of plaintiff was $28,006.81, defendants are liable for the difference of $7,069.60 under the provisions of paragraph 2 of the insuring agreements of defendants' policy.

Only when the loss is exactly equivalent to the worth of the cargo will the liability of the primary insurer ever equal $35,000; otherwise, when the loss is less than the worth of the cargo the obligation of the primary insurer will always be less than $35,000. Thus, if the cargo was worth $100,000 and the loss is $75,000, the primary insurer is only liable for $26,250 under the formula:

$$\frac{\text{Amt. Ins. } \$ 35,000}{\text{Value } \$100,000} \times \text{Loss } \$75,000 = \$26,250.$$

Under this arrangement plaintiff would not only fail to receive the limit of the $35,000, but would not be expected to recoup any of the losses above $35,000. Thus, plaintiff would almost invariably be in a position of never having total coverage, as it is purported to have under column "B" of paragraph 2 of the insuring agreement of the secondary policy.

Plaintiff is correct when it says that defendants are receiving premiums with practically no obligation to pay out losses incurred by defendants in excess of whatever the primary insurer is determined to pay. The purpose of the two policies, considered together, must certainly have been intended to protect plaintiff against losses up to $75,000. Column "B" of the insuring agreement sets forth specifically a combined limit of liability up to $75,000. We feel that the reasonable interpretation of these two policies would indicate that plaintiff should be protected by defendants against losses in excess of the amount paid by the primary insurer up to $75,000.

Insofar as defendants' second objection with respect to plaintiff's failure to attach a copy of the policy is concerned, plaintiff has alleged that it is unable to produce a copy and demands that defendants produce a copy, and the court is of the opinion that plaintiff has met the requirements under Pa. R. C. P. 1019 (h).

Whether plaintiff is entitled to cost of counsel may be determined at the time of trial.

In the light of the foregoing, defendants' preliminary objections will be dismissed, and they will be ordered to file an answer to plaintiff's complaint within 20 days.

### Order

And now, November 21, 1958, after argument before the court en banc, defendants' preliminary objections to plaintiff's complaint are dismissed, and defendants ordered to file an answer to the complaint within 20 days.